1  KAREN P. HEWITT
   United States Attorney
2  EUGENE S. LITVINOFF
   Assistant U.S. Attorney
3  California State Bar No. 214318
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone No.: (619) 557-5790
   E-Mail: Eugene.Litvinoff2@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10  UNITED STATES OF AMERICA,        )  Criminal Case No. 07CR3406-DMS
                                     )
11              Plaintiff,           )  Date:       January 25, 2008
                                     )  Time:       11:00 a.m.
12         v.                        )
                                     )  GOVERNMENT'S RESPONSE AND
13  PETER MARTIN (1),                )  OPPOSITION TO DEFENDANT'S
                                     )  MOTIONS TO:
14              Defendant.           )
                                     )  (1)  COMPEL DISCOVERY AND PRESERVE;
15                                   )       EVIDENCE;
                                     )  (2)  SUPPRESS STATEMENTS;
16                                   )  (3)  DISMISS THE INDICTMENT; AND
                                     )  (4)  REQUEST LEAVE TO FILE FURTHER
17                                   )       MOTIONS
                                     )
18                                   )
                                     )
19                                   )  TOGETHER WITH STATEMENT OF FACTS
                                     )  AND MEMORANDUM OF POINTS AND
20                                   )  AUTHORITIES, AND GOVERNMENT'S
                                     )  MOTION FOR
21                                   )
                                     )  (1)  RECIPROCAL DISCOVERY
22                                   )
   _____ )
23

24        COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel

25  Karen P. Hewitt, United States Attorney, and Eugene S. Litvinoff, Assistant U.S. Attorney, and

26  hereby files its Response and Opposition to the motions filed on behalf of Defendant PETER

27  MARTIN and hereby files its Motion For Reciprocal Discovery.  This Response and Opposition

28  and Motion For Reciprocal Discovery is based upon the files and records of this case.

# I

# INTRODUCTION

Defendant stands charged with one count of bringing in an illegal alien for financial gain and one count of bringing in an alien without presentation, both in violation of 8 U.S.C. § 1324.

# II

# STATEMENT OF FACTS

**A.    Primary Inspection**

On December 9, 2007, at approximately 12:48 a.m., Defendants Peter Martin and Sandra Kole, applied for admission at the San Ysidro, California Port of Entry in a grey1994 Mercury Topaz, bearing California license plate number 5ZQT435.  Martin was the driver and Kole the passenger.  The primary inspector, Officer Valenzuela, obtained a negative customs declaration from Martin.  Defendant Kole then told the officer that she was visiting a friend in Mexico. Officer Valenzuela queried Kole's name, which resulted in a computer-generated referral.  Officer Valenzuela escorted both defendants and their vehicle to the secondary area for further inspection.

**B.    Secondary Inspection**

At secondary inspection, Officer Varela noticed a "rim-less" spare tire in the rear cargo area of the vehicle that did not match the other tires.  He lifted the rear hatch and noticed what appeared to be new screws holding the plastic trim to the floor.  Officer Varela then lifted the carpeting and observed plywood covering the spare tire compartment area.

All vehicle occupants were escorted to the Prosecution Unit's detention area.

**C.    Detention Area**

In the detention area, the two defendants and one material witness were fingerprinted and photographed, then placed in separate detention cells.  Kole informed CBP Officer Velazquez that she was 2 months pregnant and that she noticed spotted bleeding in her urine.  Officer Valazquez contacted the Watch Commander, who requested a medical first responder.  CBP Officer Bow responded; he determined that Kole's vital signs were within the normal range.  Officer Bow recommended that trained paramedics be called to assess Kole's condition.

1    At about 2:26 a.m., San Diego Medical Services Enterprise was dispatched to the Port of

2    Entry to assess Kole's condition.  They asked Kole about her pregnancy history, pregnancies, and

3    the spotted bleeding.  The paramedics also determined that Kole's vital signs were within the

4    normal range.  Kole asked the paramedics if she would be released once she was at the hospital.

5    She was informed that she would be escorted to the hospital and remain in the custody of two

6    Customs and Border Protection officers.  She was also told that once a doctor medically cleared

7    her, she would return to the Port of Entry to be processed.  At 2:55 a.m., Kole declined further

8    medical attention, thus she was not transported to the hospital.

9    **D.    Defendant's Statement**

10           **(1)    Defendant Peter Martin**

11    At approximately 4:26 a.m., Martin was advised of his <u>Miranda</u> rights in the English

12    language.  Martin waived rights and agreed to provide a statement.  The advisement, waiver, and

13    subsequent statement were all videotaped.

14    Martin stated that a woman by the name of Jennifer LNU offered him $1000 to drive a

15    vehicle containing illegal aliens across the border.  Jennifer took Martin to a house in Tijuana

16    where he stayed for three days.

17    Martin also stated that co-defendant Kole drove the vehicle from Tijuana to the border.

18    Kole knew where to take the vehicle once they crossed into the United States.  She instructed

19    Martin on how to drive the manual transmission vehicle.  She also gave Martin a temporary

20    registration for another vehicle to place in the windshield.

21           **(2)    Defendant Sandra Kole**

22    At approximately 3:20 a.m., Kole was advised of her <u>Miranda</u> rights in the English

23    language.  Kole waived her rights and agreed to provide a statement.  The advisement, waiver, and

24    subsequent statement were all videotaped.

25    Kole admitted knowledge of the undocumented alien concealed in the vehicle.  She stated

26    that she and Martin were to deliver the vehicle to Chula Vista.  She also stated that she showed

27    Martin how do drive the vehicle, and that she drove the vehicle to the POE before Martin took over

28    as the driver.  She denied that she was going to be paid anything for this smuggling venture.

Kole also admitted to successfully smuggling aliens into the United States on four prior occasions. She did so for financial gain each time. She also admitted to being apprehended smuggling aliens on November 18, 2007 and November 21, 2007, but denied discussing compensation on these two occasions.

**E.     Material Witness's Statement**

The material witness, Sandra Gutierrez-Garcia, stated that her aunt, who resides in Los Angeles, made arrangements with an unknown male to pay $3000 to have her smuggled into the United States. Gutierrez-Garcia admitted that she does not possess documents that would allow here to legally enter the United States.

Gutierrez-Garcia also stated that after arriving in Tijuana, she was assisted by a smuggler named "Nene". Nene placed her into the compartment and closed the floor panel. She stated that she was in the compartment for approximately 30 minutes before being apprehended.

**III**

**UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES**

**A.     THE GOVERNMENT WILL CONTINUE TO COMPLY WITH ALL ITS DISCOVERY OBLIGATIONS**

The Government intends to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal Procedure. The Government has already provided a large amount of documentary discovery, as well as a DVD recording available to the defense. The Government anticipates that most discovery issues can be resolved amicably and informally, and has addressed Defendant's specific requests below.

**(1)     The Defendant's Statements**

The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements and Defendant's written statements. The Government has produced all of Defendant's written and videotaped statements that are known to the undersigned Assistant U.S. Attorney at this date. If the Government

1  discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or

2  Rule 16(a)(1)(B), such statements will be provided to Defendant.

3       The Government has no objection to the preservation of the handwritten notes taken by any

4  of the Government's agents and officers.  See United States v. Harris, 543 F.2d 1247, 1253 (9th

5  Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective

6  government witnesses).  However, the Government objects to providing Defendant with a copy

7  of any rough notes at this time.  Rule 16(a)(1)(A) does not require disclosure of the rough notes

8  where the content of those notes have been accurately reflected in a type-written report.  See

9  United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573,

10  583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where

11  there are "minor discrepancies" between the notes and a report).  The Government is not required

12  to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements"

13  (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim

14  narrative of a witness' assertion, and (2) have been approved or adopted by the witness.  United

15  States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980).  The rough notes in this case do not

16  constitute "statements" in accordance with the Jencks Act.  See United States v. Ramirez, 954 F.2d

17  1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes

18  were scattered and all the information contained in the notes was available in other forms).  The

19  notes are not Brady material because the notes do not present any material exculpatory

20  information, or any evidence favorable to Defendant that is material to guilt or punishment.

21  Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither

22  favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos,

23  27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence

24  was insufficient).  If, during a future evidentiary hearing, certain rough notes become discoverable

25  under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

26      **(2)**   **Brady Material**

27       The United States is well aware of and will continue to perform its duty under Brady v.

28  Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose

1   exculpatory evidence within its possession that is material to the issue of guilt or punishment.

2   Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be,

3   favorable to the accused, or which pertains to the credibility of the United States' case.  As stated

4   in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution

5   does not have a constitutional duty to disclose every bit of information that might affect the jury's

6   decision; it need only disclose information favorable to the defense that meets the appropriate

7   standard of materiality."  Id. at 774-775 (citation omitted).

8       The United States will turn over evidence within its possession which could be used to

9   properly impeach a witness who has been called to testify.

10      Although the United States will provide conviction records, if any, which could be used

11  to impeach a witness, the United States is under no obligation to turn over the criminal records of

12  all witnesses.  United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976).  When disclosing such

13  information, disclosure need only extend to witnesses the United States intends to call in its case-

14  in-chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini,

15  607 F.2d 1305, 1309 (9th Cir. 1979).

16      The United States opposes Defendant's request for TECS border crossing reports.  While

17  disclosure would be required if the Government intended to use TECS information as Rule 404(b)

18  evidence, see United States v. Vega, 188 F.3d 1150 (9th Cir. 1999), there is no valid basis for

19  requiring disclosure where the information will not be used as Rule 404(b) evidence.  As stated

20  above, the United States will comply with its Rule 404(b) notice and disclosure obligations.

21      Additionally, the United States opposes, without a further defense showing, Defendant's

22  request for prosecution reports for Ms. Kole.  This request is overbroad.

23      Finally, the United States will continue to comply with its obligations pursuant to

24  United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

25      **(3)    Sentencing Information**

26      Defendant claims that the United States must disclose any information affecting

27  Defendant's sentencing guidelines because such information is discoverable under Brady v.

28

1    _Maryland_, 373 U.S. 83 (1963).  The United States respectfully contends that it has no such

2    disclosure obligation under _Brady_.

3        The United States is not obligated under _Brady_ to furnish a defendant with information

4    which he already knows.  _United States v. Taylor_, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986).  _Brady_

5    is a rule of disclosure, and therefore, there can be no violation of _Brady_ if the evidence is already

6    known to the defendant.  In such case, the United States has not suppressed the evidence and

7    consequently has no _Brady_ obligation.  _See_ _United States v. Gaggi_, 811 F.2d 47, 59 (2d Cir. 1987).

8        But even assuming Defendant does not already possess the information about factors which

9    might affect his guideline range, the United States would not be required to provide information

10    bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of

11    guilty and prior to his sentencing date.  _See_ _United States v. Juvenile Male_, 864 F.2d 641, 647 (9th

12    Cir. 1988) ("No [_Brady_] violation occurs if the evidence is disclosed to the defendant at a time

13    when the disclosure remains in value.").  Accordingly, Defendant's demand for this information

14    is premature.

15        **(4)    Defendant's Prior Record**

16        The United States has already provided Defendant with a copy of his known criminal

17    record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(B).

18        **(5)    Proposed 404(b) Evidence**

19        Should the United States seek to introduce any similar act evidence pursuant to Federal

20    Rule of Evidence 404(b), the United States will provide Defendant with notice of its proposed use

21    of such evidence and information about such bad act at the time the United States' trial

22    memorandum is filed.

23        **(6)    Evidence Seized**

24        The United States has complied and will continue to comply with Rule 16(a)(1)(C) in

25    allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical

26    evidence which is within the possession, custody or control of the United States, and which is

27    material to the preparation of Defendant's defense or are intended for use by the United States as

28    evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

1    The United States, however, need not produce rebuttal evidence in advance of trial. <u>United</u>

2    <u>States v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984), <u>cert. denied</u>, 474 U.S. 953 (1985).

3    **(7)     Preservation of Evidence**

4    The United States will preserve all evidence to which Defendant is entitled pursuant to the

5    relevant discovery rules.  However, the United States objects to Defendant's blanket request to

6    preserve all physical evidence.

7    The United States has complied and will continue to comply with Rule 16(a)(1)(C) in

8    allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical

9    evidence which is within his possession, custody or control of the United States, and which is

10   material to the preparation of Defendant's defense or are intended for use by the United States as

11   evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

12   The United States has made the evidence available to Defendant and Defendant's investigators and

13   will comply with any request for inspection.

14   Again, the United States will continue to comply with its obligations pursuant to

15   <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).

16   **(8)     Tangible Objects**

17   The Government has complied and will continue to comply with Rule 16(a)(1)(E) in

18   allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all

19   tangible objects seized that is within its possession, custody, or control, and that is either material

20   to the preparation of Defendant's defense, or is intended for use by the Government as evidence

21   during its case-in-chief at trial, or was obtained from or belongs to Defendant.   The Government

22   need not, however, produce rebuttal evidence in advance of trial.  <u>United States v. Givens</u>, 767

23   F.2d 574, 584 (9th Cir. 1984).

24   **(9)     Expert Witnesses**

25   The Government will comply with Rule 16(a)(1)(G) and provide Defendant with a written

26   summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705

27   of the Federal Rules of Evidence during its case-in-chief at trial.  This summary shall include the

28

1    expert witnesses' qualifications, the expert witnesses opinions, the bases, and reasons for those

2    opinions.

3        **(10)    Evidence of Bias or Motive to Lie**

4        The United States is unaware of any evidence indicating that a prospective witness is biased

5    or prejudiced against Defendant.  The United States is also unaware of any evidence that

6    prospective witnesses have a motive to falsify or distort testimony.

7        **(11)    Impeachment Evidence**

8        The United States will turn over evidence within its possession which could be used to

9    properly impeach a witness who has been called to testify.

10        **(12)    Criminal Investigation of Government Witness**

11        Defendants are not entitled to any evidence that a prospective witness is under criminal

12    investigation by federal, state, or local authorities.  "[T]he criminal records of such [Government]

13    witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976);

14    United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records

15    of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United

16    States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that

17    the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a

18    defendant with the criminal records of the Government's intended witnesses.") (citing Taylor, 542

19    F.2d at 1026).

20        The Government will, however, provide the conviction record, if any, which could be used

21    to impeach witnesses the Government intends to call in its case-in-chief.  When disclosing such

22    information, disclosure need only extend to witnesses the United States intends to call in its case-

23    in-chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini,

24    607 F.2d 1305, 1309 (9th Cir. 1979).

25        **(13)    Evidence Affecting Perception, Recollection, Communication or Veracity**

26        The United States is unaware of any evidence indicating that a prospective witness has a

27    problem with perception, recollection, communication, or truth-telling.

28    //

1      **(14)    Jencks Act Material**

2          The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified

3      on direct examination, the Government must give the Defendant any "statement" (as defined by

4      the Jencks Act) in the Government's possession that was made by the witness relating to the

5      subject matter to which the witness testified. 18 U.S.C. § 3500(b).  A "statement" under the Jencks

6      Act is (1) a written statement made by the witness and signed or otherwise adopted or approved

7      by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's

8      oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e).  If notes

9      are read back to a witness to see whether or not the government agent correctly understood what

10     the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks

11     Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United

12     States, 425 U.S. 94, 98 (1976)).  While the Government is only required to produce all Jencks Act

13     material after the witness testifies, the Government plans to provide most (if not all) Jencks Act

14     material well in advance of trial to avoid any needless delays.

15     **(15)    Giglio Information**

16         As stated previously, the United States will comply with its obligations pursuant to Brady

17     v. Maryland, 373 U.S.  83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir.

18     1991), and Giglio v. United States, 405 U.S. 150 (1972).

19     **(13)    Witness Addresses**

20         The Government has already provided Defendant with the reports containing the names of

21     the agents involved in the apprehension and interviews of Defendant.  A defendant in a non-capital

22     case, however, has no right to discover the identity of prospective Government witnesses prior to

23     trial.  See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d

24     1502, 1522 (9th Cir 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United

25     States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996).   Nevertheless, in its trial memorandum, the

26     Government will provide Defendant with a list of all witnesses whom it intends to call in its case-

27     in-chief, although delivery of such a witness list is not required.  See United States v. Discher, 960

28     F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).   The

1   Government is not aware of any "tips" provided by anonymous or identified persons that resulted

2   in Defendant's arrest.

3        The Government objects to any request that the Government provide a list of every witness

4   to the crimes charged who will not be called as a Government witness. "There is no statutory basis

5   for granting such broad requests," and a request for the names and addresses of witnesses who will

6   not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(C)."  United States v. Hsin-

7   Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502

8   (D. Del. 1980)). The Government is not required to produce all possible information and evidence

9   regarding any speculative defense claimed by Defendant.  Wood v. Bartholomew, 516 U.S. 1, 6-8

10  (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery

11  of admissible exculpatory evidence are not subject to disclosure under Brady).

12       **(14)   Witnesses Favorable to the Defendant**

13       As stated earlier, the Government will continue to comply with its obligations under Brady

14  and its progeny.  At the present time, the Government is not aware of any witnesses who have

15  made an arguably favorable statements concerning Defendant or who could not identify him or

16  who were unsure of his identity or participation in the crime charged.

17       **(15)   Statements Relevant to the Defense**

18       To reiterate, the United States will comply with all of its discovery obligations.  However,

19  "the prosecution does not have a constitutional duty to disclose every bit of information that might

20  affect the jury's decision; it need only disclose information favorable to the defense that meets the

21  appropriate standard of materiality."  Gardner, 611 F.2d at 774-775 (citation omitted).

22       **(16)   Agreements Between the Government and Witnesses**

23       The Government has not made or attempted to make any agreements with prospective

24  Government witnesses for any type of compensation for their cooperation or testimony.

25       **(17)   Informants and Cooperating Witnesses**

26       At this time, the Government is not aware of any confidential informants or cooperating

27  witnesses involved in this case.  The Government must generally disclose the identity of

28  informants where (1) the informant is a material witness, or (2) the informant's testimony is crucial

to the defense. <u>Roviaro v. United States</u>, 353 U.S. 53, 59 (1957).  If there is a confidential informant involved in this case, the Court may, in some circumstances, be required to conduct an in-chambers inspection to determine whether disclosure of the informant's identity is required under <u>Roviaro</u>.  <u>See</u> <u>United States v. Ramirez-Rangel</u>, 103 F.3d 1501, 1508 (9th Cir. 1997).  If the Government determines that there is a confidential informant somehow involved in this case, the Government will either disclose the identity of the informant or submit the informant's identity to the Court for an in-chambers inspection.

**(18)     Bias by Informants or Cooperating Witnesses**

As stated previously, the United States will comply with its obligations pursuant to <u>Brady v. Maryland</u>, 373 U.S.  83 (1963), the Jencks Act, <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991), and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

**(19)     Residual Request**

The Government has already complied with Defendant's request for prompt compliance with its discovery obligations.  The Government will comply with all of its discovery obligations, but objects any broad and unspecified residual discovery requests.

**B.     DEFENDANT'S MOTION SUPPRESS STATEMENTS SHOULD BE DENIED**

Defendant moves to suppress statements and requests that the Government prove that all statements were voluntarily made, and made after a knowing and intelligent <u>Miranda</u> waiver. Defendant contends that 18 U.S.C. § 3501 mandates an evidentiary hearing be held to determine whether Defendant's statements were voluntary.

**1.     Knowing, Intelligent, and Voluntary Miranda Waiver**

A statement made in response to custodial interrogation is admissible under <u>Miranda v. Arizona</u>, 384 U.S. 437 (1966), and 18 U.S.C. § 3501 if a preponderance of the evidence indicates that the statement was made after an advisement of <u>Miranda</u> rights, and was not elicited by improper coercion.  <u>See</u> <u>Colorado v. Connelly</u>, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and <u>Miranda</u> determinations; valid waiver of <u>Miranda</u> rights should not be found in the "absence of police overreaching").

1      A valid Miranda waiver depends on the totality of the circumstances, including the

2   background, experience, and conduct of the defendant. North Carolina v. Butler, 441 U.S. 369,

3   374-75 (1979).   To be knowing and intelligent, "the waiver must have been made with a full

4   awareness of both the nature of the right being abandoned and the consequences of the decision

5   to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). The Government bears the burden

6   of establishing the existence of a valid Miranda waiver. North Carolina v. Butler, 441 U.S. at 373.

7   In assessing the validity of a defendant's Miranda waiver, this Courts should analyze the totality

8   of the circumstances surrounding the interrogations.  See Moran v. Burbine, 475 U.S. at 421.

9   Factors commonly considered include: (1) the defendant's age (see United States v. Doe, 155 F.3d

10  1070, 1074-75 (9th Cir. 1998) (en banc) (valid waiver because the 17 year old defendant did not

11  have trouble understanding questions, gave coherent answers, and did not ask officers to notify

12  parents), (2) the defendant's familiarity with the criminal justice system (see United States v.

13  Williams, 291 F.3d 1180, 1190 (9th Cir. 2002) (waiver valid in part because defendant was

14  familiar with the criminal justice system from past encounters), (3) the explicitness of the Miranda

15  waiver (see United States v. Bernard S., 795 F.2d 749, 753 n.4 (9th Cir. 1986) (a written Miranda

16  waiver is "strong evidence that the waiver is valid"); United States v. Amano, 229 F.3d 801, 805

17  (9th Cir. 2000) (waiver valid where Miranda rights were read to defendant twice and defendant

18  signed a written waiver), and (4) the time lapse between the reading of the Miranda warnings and

19  the interrogation or confession.  See Guam v. Dela Pena, 72 F.3d 767, 769-70 (9th Cir. 1995)

20  (valid waiver despite 15-hour delay between Miranda warnings and interview). Furthermore, if

21  there are multiple interrogations, as occurred in this case, repeat Miranda warnings are generally

22  not required unless an "appreciable time" elapses between interrogations.  See United States v.

23  Nordling, 804 F.2d 1466, 1471 (9th Cir. 1986).

24      Here, the CBP Officers scrupulously honored the letter and spirit of Miranda in carefully

25  advising Defendant of his Miranda rights prior to any post-arrest custodial interrogation.  As

26  evidenced by the video recording, Defendant was advised of his Miranda rights, both orally and

27  in writing, before the interrogation.  Defendant orally agreed to waive his Miranda rights and

28

1  signed a <u>Miranda</u> waiver form.  Based on the totality of the circumstances, Defendant's statements

2  should not be suppressed because her <u>Miranda</u> waiver was knowing, intelligent, and voluntary.

## 2.    Defendant's Statements Were Voluntary

4  The inquiry into the voluntariness of statements is the same as the inquiry into the

5  voluntariness of a waiver of <u>Miranda</u> rights.  <u>See</u> <u>Derrick v. Peterson</u>, 924 F.2d 813, 820 (9th

6  Cir.1990).   Courts look to the totality of the circumstances to determine whether the statements

7  were "the product of free and deliberate choice rather than coercion or improper inducement."

8  <u>United States v. Doe</u>, 155 F.3d 1070, 1074(9th Cir. 1998)(en banc).

9  A confession is involuntary if "coerced either by physical intimidation or psychological

10 pressure."  <u>United States v. Crawford</u>, 372 F.3d 1048, 1060 (9th Cir. 2004) (quoting <u>United States</u>

11 <u>v. Haswood</u>, 350 F.3d 1024, 1027 (9th Cir. 2003)).  In determining whether a defendant's

12 confession was voluntary, "the question is 'whether the defendant's will was overborne at the time

13 he confessed.'"  <u>Clark v. Murphy</u>, 331 F.3d 1062, 1072 (9th Cir.), <u>cert. denied</u>, _ U.S. _, 124 S.

14 Ct. 446 (2003) (<u>quoting</u> <u>Haynes v. Washington</u>, 373 U.S. 503, 513 (1963)).  Psychological

15 coercion invokes no per se rule. <u>United States v. Miller</u>, 984 F.2d 1028, 1030 (9th Cir. 1993).

16 Therefore, the Court must "consider the totality of the circumstances involved and their effect upon

17 the will of the defendant."  <u>Id.</u> at 1031 (<u>citing</u> <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226-27

18 (1973)).

19 In determining the issue of voluntariness, this Court should consider the five factors under

20 18 U.S.C. § 3501(b).  <u>United States v. Andaverde</u>, 64 F.3d 1305, 1311 (9th Cir. 1995).  These five

21 factors include: (1) the time elapsing between arrest and arraignment of the defendant making the

22 confession, if it was made after arrest and before arraignment, (2) whether such defendant knew

23 the nature of the offense with which he or she was charged or of which he was suspected at the

24 time of making the confession, (3) whether or not such defendant was advised or knew that he or

25 she was not required to make any statement and that any such statement could be used against him,

26 (4) whether or not such defendant had been advised prior to questioning of his or her right to the

27 assistance of counsel; and (5)  whether or not such defendant was without the assistance of counsel

28

1    when questioned and when giving such confession.  18 U.S.C. § 3501(b).  All five statutory factors

2    under 18 U.S.C. § 3501(b) need not be met to find the statements were voluntarily made.  See

3    Andaverde, 64 F.3d at 1313.

4         As discussed above, Defendant was read his Miranda rights and was provided with a

5    written advice of rights and Miranda waiver form prior to his post-arrest interview.   After

6    Defendant acknowledged his Miranda rights, a dialogue ensued between the agent and Defendant,

7    whereupon Defendant decided to make a statement without having an attorney present.  Defendant

8    explicitly stated that he understood his Miranda rights and agreed to waive those rights.  See

9    United States v. Gamez, 301 F.3d 1138, 1144 (9th Cir. 2002).  Defendant's statements were not

10   the product of physical intimidation or psychological pressure of any kind by any Government

11   agent.  There is no evidence that Defendant's will was overborne at the time of her statements.

12   Consequently, Defendant's motion to suppress her statements as involuntarily given should be

13   denied.

14   **C.    DEFENDANT'S MOTION TO DISMISS DUE TO MISINSTRUCTION TO THE**
     **GRAND JURY SHOULD BE DENIED**

15

16        Defendant has filed a lengthy attack upon Judge Larry A. Burns' instructions to the Grand

17   Jury that was empaneled on January 11, 2008.  Notably, every court in this District that has

     addressed the issues raised in this motion have denied it as meritless.  Attached in Appendix A is
18
     a written order denying this very motion, issued by the Honorable John A. Houston on January 11,
19
     2008. [See Appendix A; United States v. Deshotels, 07cr1430-JAH, Order of January 11, 2008.]
20
     For the reasons stated in Judge Houston's order, this Court should also deny Defendant's motion.
21
22   **D.    THE GOVERNMENT DOES NOT OPPOSE LEAVE TO FILE FURTHER**
     **MOTIONS, SO LONG AS THEY ARE BASED ON NEW EVIDENCE**

23        The Government does not object to the granting of leave to file further motions as long

24   as the order applies equally to both parties and any additional defense motions are based on

25   newly discovered evidence or discovery provided by the Government subsequent to the instant

26   motion.

27                                          **IV**

28

**GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY**

**A.     ALL EVIDENCE FOR DEFENDANT'S CASE-IN-CHIEF**

Since the Government will honor Defendant's request for disclosure under Rule 16(a)(1)(E), the Government is entitled to reciprocal discovery under Rule 16(b)(1).  Pursuant to Rule 16(b)(1), the United States requests that Defendant permit the Government to inspect, copy and photograph any and all books, papers, documents, photographs, tangible objects, or make copies or portions thereof, which are within the possession, custody, or control of Defendant and which Defendant intends to introduce as evidence in his case-in-chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession and control of Defendant, which he intends to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendant intends to call as a witness.  The Government also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the Government receives the reciprocal discovery to which it is entitled.

**B.     RECIPROCAL JENCKS – STATEMENTS BY DEFENSE WITNESSES**

Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires production of the prior statements of all witnesses, except a statement made by Defendant.  The time frame established by Rule 26.2 requires the statements to be provided to the Government after the witness has testified.  However, to expedite trial proceedings, the Government hereby requests that Defendant be ordered to provide all prior statements of defense witnesses by a reasonable date before trial to be set by the Court.  Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and reports.

//

//

//

1

**V**

2

<u>**CONCLUSION**</u>

3

For the foregoing reasons, the United States requests that the Court deny Defendant's

4

motions, except where unopposed, and grant the Government's motion for reciprocal discovery.

5

DATED: January 21, 2008

6

Respectfully submitted,

7

KAREN P. HEWITT
United States Attorney

8

9

/s/ *Eugene S. Litvinoff*

10

EUGENE S. LITVINOFF
Assistant U.S. Attorney

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    UNITED STATES DISTRICT COURT

2    SOUTHERN DISTRICT OF CALIFORNIA

3    UNITED STATES OF AMERICA,        )         Case No. 07CR3406-DMS
                                      )
4              Plaintiff,             )
                                      )
5         v.                          )
                                      )         CERTIFICATE OF SERVICE
6    PETER MARTIN (1),                )
                                      )
7              Defendant.             )
    _____)

8

9    IT IS HEREBY CERTIFIED THAT:

10        I, EUGENE S. LITVINOFF, am a citizen of the United States and am at least eighteen

11   years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-

12   8893.

13        I am not a party to the above-entitled action.  I have caused service of **GOVERNMENT'S
     RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS AND GOVERNMENT'S
14   MOTION FOR RECIPROCAL DISCOVERY** on the following parties by electronically filing
15   the foregoing with the Clerk of the District Court using its ECF System, which electronically

16   notifies them.

17        **1.    Amber Baylor, Esq.**

18        **2.    Scott Pactor, Esq.**

19        I hereby certify that I have caused to be mailed the foregoing, by the United States Postal

20   Service, to the following non-ECF participants on this case:

21        N/A

22   the last known address, at which place there is delivery service of mail from the United States

23   Postal Service.

24        I declare under penalty of perjury that the foregoing is true and correct.

25        Executed on January 21, 2008

26                              /s/ *Eugene S. Litvinoff*

27                              EUGENE S. LITVINOFF

28

Government's Response – Martin, Peter                                07CR3406-DMS