KAREN P. HEWITT
United States Attorney
EUGENE S. LITVINOFF
Assistant U.S. Attorney
California State Bar No. 214318
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone No. (619) 557-5790
E-Mail: Eugene.Litvinoff2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No.  07CR3406-DMS |
|---|---|---|
| | ) | |
| | ) | Date:        February 29, 2008 |
| Plaintiff, | ) | Time:        11:00 a.m. |
| | ) | Honorable Dana M. Sabraw |
| v. | ) | |
| | ) | |
| PETER MICHAEL MARTIN (1), AND | ) | UNITED STATES' MOTIONS IN LIMINE TO: |
| SANDRA KOLE (2) | ) | |
| | ) | (A)    PRECLUDE EVIDENCE OF |
| Defendants. | ) |         MATERIAL WITNESS'S PRIOR |
| | ) |         ATTEMPTS TO ENTER; |
| | ) | (B)    EXCLUDE SELF-SERVING HEARSAY; |
| | ) | (C)    ADMIT DEMEANOR EVIDENCE; |
| | ) | (D)    PROHIBIT REFERENCE TO |
| | ) |         PUNISHMENT; |
| | ) | (E)    EXCLUDE ALL WITNESSES EXCEPT |
| | ) |         CASE AGENTS; |
| | ) | (F)    EXCLUDE EXPERT TESTIMONY; |
| | ) | (G)    ADMIT RULE 404(B) EVIDENCE |
| | ) | (H)    PREVENT EVIDENCE OF DURESS OR |
| | ) |         NECESSITY; AND |
| | ) | (I)    COMPEL RECIPROCAL DISCOVERY. |
| | ) | |
| _____ | ) | |

COMES NOW the plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney, and Eugene S. Litvinoff, Assistant United States Attorney and hereby files its Motions in Limine.  These motions are based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

//

//

**I**

**STATEMENT OF THE CASE**

On December 19, 2007, a federal grand jury sitting in the Southern District of California returned an eight-count indictment against defendants Peter Michael Martin ("Martin") and Sandra Kole ("Kole"). Martin was charged with: (1) one count of bringing in an illegal alien for financial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii); and (2) one count of bringing in an illegal alien without presentation, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii). The charges against Martin relate only to events that took place on December 9, 2007.

Kole, on the other hand, was charged with: (1) four counts of bringing in illegal aliens for financial gain, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii); and (2) four counts of bringing in illegal aliens without presentation, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii). The charges against Kole relate to events that took place both on December 9, 2007 and November 18, 2007.

On December 20, 2007, Martin and Kole were arraigned on the indictment. Both entered pleas of not guilty.

**II**

**STATEMENT OF FACTS**

**A.    DECEMBER 9, 2007 APPREHENSION**

     **1.    Primary Inspection**

On December 9, 2007, at approximately 12:48 a.m., Defendants Peter Martin and Sandra Kole, applied for admission at the San Ysidro, California Port of Entry in a grey1994 Mercury Topaz, bearing California license plate number 5ZQT435. Martin was the driver and Kole the passenger. The primary inspector, Officer Valenzuela, obtained a negative customs declaration from Martin. Officer Valenzuela asked Martin what Martin and Kole were doing in Mexico; Kole answered that she was visiting a friend. Officer Valenzuela queried Kole's name, which resulted in a positive alert for prior smuggling. Officer Valenzuela escorted both defendants and their vehicle to the secondary area for further inspection.

     **2.    Secondary Inspection**

At secondary inspection, Officer Varela noticed a "rim-less" spare tire in the rear cargo area of the vehicle that appeared to be larger than the tires on the vehicle. He lifted the rear hatch and noticed

07CR3406-DMS

1  what appeared to be new screws holding the plastic trim to the floor.  Officer Varela then lifted the
2  carpeting and observed a wooden non-factory floorboard.  Upon lifting the board, Officer Varela
3  discovered a person lying in the factory spare tire well.

4      Martin and Kole were escorted to the Prosecution Unit's detention area.  The material witness
5  was only able to exit the compartment after receiving the assistance of a CBP Officer.

6  **3.    Detention Area**

7      In the detention area, the two defendants and one material witness were fingerprinted and
8  photographed, then placed in separate detention cells.  Kole informed CBP Officer Velazquez that she
9  was 2 months pregnant and that she noticed spotted bleeding in her urine.  Officer Valazquez contacted
10  the Watch Commander, who requested a medical first responder.  CBP Officer Bow responded; he
11  determined that Kole's vital signs were within the normal range.  Officer Bow recommended that trained
12  paramedics be called to assess Kole's condition.

13      At about 2:26 a.m., San Diego Medical Services Enterprise was dispatched to the Port of Entry
14  to assess Kole's condition.  They asked Kole about her pregnancy history, pregnancies, and the spotted
15  bleeding.  The paramedics also determined that Kole's vital signs were within the normal range.  Kole
16  asked the paramedics if she would be released once she was at the hospital.  She was informed that she
17  would be escorted to the hospital and remain in the custody of two Customs and Border Protection
18  officers.  She was also told that once a doctor medically cleared her, she would return to the Port of
19  Entry to be processed.  At 2:55 a.m., Kole declined further medical attention, thus she was not
20  transported to the hospital.

21  **4.    Defendant's Statement**

22  **a.    Defendant #1 – Peter Michael Martin**

23      At approximately 4:26 a.m., Martin was advised of his Miranda rights in the English language.
24  Martin waived his rights and agreed to provide a statement.   The advisement, waiver, and subsequent
25  statement were all videotaped.

26      Martin stated that a woman by the name of Jennifer LNU approached him in Oceanside,
27  California and offered him $1000 to drive a vehicle containing illegal aliens across the border. Jennifer
28  took Martin, along with two other men she recruited, to a house in Tijuana where he stayed for three

1   days.

2       Martin stated that he was instructed to drive the vehicle across the border, but that he did not

3   know where he was to deliver it.  Martin also stated that co-defendant Kole drove the vehicle from

4   Tijuana to the border, and that she showed Martin how do drive the manual transmission vehicle.

5   Martin took over as the driver of the vehicle near the port of entry.  According to Martin, Kole knew

6   where to take the vehicle once they crossed into the United States.  She also gave Martin a temporary

7   registration for another vehicle to place in the windshield to make it look like the vehicle was properly

8   registered.

9       Martin further stated that once he and Kole crossed the border, Kole was to call a set of

10  telephone numbers.  Those phone numbers were found in Martin's wallet, which Martin confirmed.

11  Lastly, Martin stated that he was to deliver the undocumented alien, drive back to Tijuana, and receive

12  his $1000.

13              **b.      Defendant #2 – Sandra Kole**

14      At approximately 3:20 a.m., Kole was advised of her <u>Miranda</u> rights in the English language.

15  Kole waived her rights and agreed to provide a statement.   The advisement, waiver, and subsequent

16  statement were all videotaped.

17      Kole admitted knowledge of the undocumented alien concealed in the vehicle.  She stated that

18  she and Martin were to deliver the vehicle to an unknown location off the Palomar Street highway exit

19  in Chula Vista, California.  She stated that she declined to be the driver on this occasion because she did

20  not want to get in trouble.  Kole also admitted that she observed a Hispanic looking female enter the

21  vehicle, but that she did not know the exact location of her concealment.  She denied physically assisting

22  the undocumented alien into the compartment, though she did admit that she was told that  a female was

23  concealed in the vehicle.

24      She also stated that she showed Martin how do drive the vehicle, and that she drove the vehicle

25  to the POE before Martin took over as the driver.  Kole stated that she had just met Martin right before

26  they headed to the border.  She stated that she told Martin to say that the two of them were roommates

27  in case he was asked by the officer.

28      Kole stated that she believed the load vehicle was not properly registered and so she had Martin

4                                                   07CR3406-DMS

place the temporary vehicle registration of her 1993 Mercedes-Benz 190E on the windshield. She said that her parents gave her the Mercedes-Benz sometime in October, that the ignition key to her Mercedes-Benz was attached to the key ring of the 1994 Mercury Topaz, and that the Mercedes-Benz was currently in Tijuana. She also admitted that her cellular phone was on the key chain with the key of the Mercury Topaz.

Kole stated that her boyfriend, who she identified as Julio Ramirez, had also been in the vehicle, but that he exited before they reached the port of entry. Kole denied that she was going to be paid anything for this smuggling venture.

Kole admitted to successfully smuggling aliens into the United States on four prior and unrelated occasions. She did so for financial gain each time (she admitted to receiving payments of $800, $600, $400, and $100). On one occasion, she smuggled a child through the San Ysidro Port of Entry's pedestrian facility. Kole also admitted to being apprehended while smuggling aliens on November 18, 2007 and November 21, 2007, but she denied discussing compensation on these two occasions.

Kole stated that she agreed to engage in alien smuggling because she wanted to help people who are in need.

**5.    Material Witness's Statement**

The material witness, Sandra Gutierrez-Garcia, stated that her aunt, who resides in Los Angeles, made arrangements with an unknown male to pay $3000 to have her smuggled into the United States. Gutierrez-Garcia admitted that she does not possess documents that would allow here to legally enter the United States.

Gutierrez-Garcia also stated that after arriving in Tijuana, she was assisted by a smuggler named "Nene". Nene placed her into the compartment and closed the floor panel. She stated that she was in the compartment for approximately 30 minutes before being apprehended.

**B.    NOVEMBER 18, 2007 APPREHENSION**

**1.    Primary Inspection**

On November 18, 2007, at approximately 8:10 a.m., Kole applied for admission at the San Ysidro, California Port of Entry as the driver and visibly sole occupant of a 2001 Chevrolet Malibu, bearing California license plate number 5PNB237. She presented a temporary California Identification

07CR3406-DMS

1    printout, along with a few copies of a Mexican police report.  Kole stated that she is a U.S. citizen and

2    that her identification was stolen in Mexico.

3        Officer Reid received a negative customs declaration from Kole.  He instructed Kole to open the

4    trunk of her vehicle.  Upon doing so, Officer Reid immediately discovered several c individuals hiding

5    in the trunk.  Officer Reid radioed for officer assistance, as well as sent the vehicle to the secondary lot

6    for further inspection.

7        **2.    <u>Secondary Inspection</u>**

8        In secondary inspection, three individuals were removed from the trunk.  All admitted to being

9    citizens and nationals of Mexico.  All admitted that they did not possess the proper legal documentation

10   to enter, pass through, or reside in the United States.

11       **3.    <u>Defendant #2 – Sandra Kole – Voluntary Statement</u>**

12       Kole made the following voluntary statement –

13   •    She admitted to knowingly facilitating in the illegal entry of numerous undocumented

14        aliens into the United States;

15   •    She admitted that on November 17, 2007, she made arrangements with a male by the

16        name of "Hector";

17   •    She stated that she did not see anyone get into the trunk, but admitted that she knew they

18        were in the trunk;

19   •    She admitted that, one week prior, she successfully smuggled an undocumented alien

20        into the United States, and that she received $600 compensation;

21   •    She admitted that Hector had promised her a payment of $1000 if she smuggled

22        numerous undocumented aliens into the United States;

23   •    She admitted that she knew that the individuals in the trunk did not possess the proper

24        legal documentation to enter, pass through, or reside in the United States;

25   •    She admitted that she was going to drop the undocumented aliens and vehicle off at the

26        Palomar Road gas station;

27   •    She admitted that she knows that it is unlawful to smuggle undocumented aliens into the

28        United States; and

- She stated that she is not under the influence of any type of alcohol or narcotic.

## III

## UNITED STATES' MOTIONS IN LIMINE

### A.   MOTION TO PRECLUDE EVIDENCE OF MATERIAL WITNESS'S PRIOR ATTEMPTS TO ENTER THE UNITED STATES

Defendants may seek to introduce evidence regarding the material witness's prior attempts to enter the United States illegally.  The witness's prior attempts to enter, if any, are irrelevant to her testimony in this case.  The material witness's testimony is relevant to establishing her alienage and the financial arrangements made to be smuggled into the United States.

Defendants may seek to introduce testimony that the material witness had not encountered Defendants in her previous attempts to cross the border to support the notion that Defendant is not a regular driver for an alien smuggling organization.  This evidence is irrelevant to the case at hand, in which the United States must prove that Defendant brought into the United States an illegal alien for financial gain and that the Defendants brought into the United States an illegal alien without presenting the alien to an immigration officer at a designated port of entry, having the intent to violate the immigration laws on or about December 9, 2007 and/or November 18, 2007.

Likewise, Defendants should be prohibited from eliciting prior attempts to enter in order to attack the credibility of the material witness.  Pursuant to Rule 403, the probative value of eliciting this type of testimony is substantially outweighed by the danger of undue prejudice, waste of time, and the needless presentation of cumulative evidence.  By admitting that she is an alien without any legal right to enter the United States, and testifying that she was paying money to be smuggled illegally into the United States, the material witness will have disclosed to the jury the relevant facts that weigh upon her credibility – that is, that she was trying to violate the immigration laws herself by arranging illegal transportation into the United States.  That she may have attempted to cross before does not further impeach her testimony.  Consequently, testimony regarding the material witness's prior attempts to enter the United States, if any, should be excluded.

### B.   MOTION TO EXCLUDE SELF-SERVING HEARSAY

The United States anticipates that Defendants may try to elicit potentially exculpatory statements made by Defendants from witnesses for the government or the defense.  The United States moves, in

07CR3406-DMS

*limine*, to prohibit defense counsel from eliciting self-serving hearsay from either government witnesses or defense witnesses.

Defendants' out of court statements are inadmissible hearsay when offered by Defendants through witnesses. Defendants cannot rely on Fed. R. Evid. 801(d)(2) because they are not the proponent of the evidence, and the evidence is not being offered against them. Under Rule 801(d)(2), a statement of a party is not hearsay only when it is being offered against the party, and not when it is being offered on a declarant's behalf. Defendants cannot attempt to have "self-serving hearsay" brought before the jury without the benefit of cross-examination. See, e.g., United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).

Nor can the Defendants rely on Rule 801(d)(1)(B), which provides for an exception to the hearsay rule for a statement offered to rebut a charge of recent fabrication, since such a statement is not admissible unless the Defendant has already testified and has been impeached. United States v. Navarro-Varelas, 541 F.2d 1331, 1334 (9th Cir. 1976), cert. denied, 429 U.S. 1045 (1977).

The only exception to the hearsay rule that could possibly permit a defendant to offer his or her own out-of-court statements at trial would be Rule 803(3), which excludes from the definition of hearsay a statement of the declarant's "then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health) but not including a statement of memory or belief to prove the fact remembered or believed. A person's belief may not be proved by previous out-of-court statements." See United States v. Cohen, 631 F.2d 522 (5th Cir. 1980) (emphasis added).

The inadmissibility of the Defendants' beliefs sought to be introduced on his or her behalf through other witnesses is clearly prohibited by United States v. Emmert, 829 F.2d 805 (9th Cir. 1987). In Emmert, the Ninth Circuit affirmed District Judge Brewster's exclusion of testimony by a witness that the defendant told the witness that the defendant was afraid of government agents. The Court, citing Cohen with approval, emphasized that if the reservation in the test of Rule 803(3) (that is, excluding evidence of a statement of belief to prove the fact believed) is to have any effect, it must be understood to narrowly limit those admissible statements to declarations of condition–"I'm scared"–and not belief–"I'm scared because Galkin [the undercover agent] threatened me."

## C.    MOTION TO ADMIT DEMEANOR EVIDENCE

### 1.    Demeanor Evidence is Admissible to Circumstantially Show Knowledge

Evidence regarding Defendants' demeanor and physical appearance is admissible as circumstantial evidence helpful to the jury's determination of whether the Defendants knew contraband was concealed in their vehicle. See Fed. R. Evid. 701; United States v. Romero-Avila, 210 F.3d 1017, 1023 (9th Cir. 2000) (identifying defendant's nervousness at the border as part of the "strong independent evidence of defendant's guilt"); United States v. Hursh, 217 F3d. 761, 767-68 (9th Cir. 2000) (nervousness during border questioning at primary inspection and later nervousness while car was being inspected at secondary was additional evidence of knowledge); United States v. Klimavicius-Viloria, 144 F. 3d 1249, 1263-1265 (9th Cir. 1998) (the crew's demeanor, such as becoming less cooperative when the Coast Guard decided to search a tank where bales of cocaine were later found, was relevant to show knowing participation); United States v. Lui, 941 F.2d 844, 848, 848 n.2 (9th Cir. 1991) (defendant's actions both before and after discovery of drugs, such as acting disinterested and not helping in the search, and, when the inspector found the drugs, stepping away without attempting to see to what the inspector was referring, supported a finding that the defendant was guilty); United States v. Barbosa, 906 F.2d 1366, 1368 (9th Cir. 1990) (defendant's apparent nervousness and anxiety during inspection was valid circumstantial evidence of knowledge of concealed narcotics).

### 2.    Nervousness Testimony Does Not Violate Rules 701 and 704(b)

A lay witness may state his opinion that a person appeared nervous. See United States v. Mastberg, 503 F.2d 465, 470 (9th Cir. 1974). Rule 701 allows a lay witness to testify to opinions or inferences (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on specialized knowledge.

## D.    MOTION TO EXCLUDE EVIDENCE AND ARGUMENT REFERRING TO DEFENDANT'S  POTENTIAL PUNISHMENT

"Evidence which is not relevant is not admissible," (Fed. R. Evid. 402), and the jury should "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." Ninth Cir. Model Jury Instructions, § 3.1 (2003). Defense counsel may seek to inform the jury of the potential penalties

1    Defendants face if convicted and, in particular, the three-year mandatory minimum sentence Martin

2    faces and the five-year mandatory minimum sentence Kole faces.  Information about penalty and

3    punishment draws the attention of the jury away from their chief function as the sole judges of the facts,

4    opens the door to compromise verdicts, and confuses the issues to be decided.  See United States v.

5    Olano, 62 F.3d 1180, 1202 (9th Cir. 1995); United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991).

6    In federal court, the jury is not permitted to consider punishment in deciding whether the United States

7    has proved its case against the defendant beyond a reasonable doubt.  9th Cir. Crim. Jury Instr. §7.4

8    (2003).  Any such argument or reference would be an improper attempt to have the jury unduly

9    influenced by sympathy for the defendant and prejudice against the United States.

10        The United States, therefore, respectfully requests this Court to preclude any mention of possible

11   penalty at any point during the trial.

12   **E.    MOTION TO EXCLUDE WITNESSES DURING TRIAL WITH THE EXCEPTION OF
         THE UNITED STATES' CASE AGENTS**

13        Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be

14   essential to the presentation of the party's cause" should not be ordered excluded from the court during

15   trial.  The case agent involved in this case has been critical in moving the investigation forward to this

16   point and is considered by the United States to be an integral part of the trial team.  As such, the case

17   agent's presence at trial is necessary to the United States.

18        The United States requests that Defendant's testifying witnesses be excluded during trial

19   pursuant to Rule 615, unless a similar showing is made.

20   **F.    MOTION TO EXCLUDE EXPERT TESTIMONY**

21        The United States, pursuant to Federal Rules of Criminal Procedure 12.2 and 16(b), requested

22   that Defendants permit the United States to inspect and copy or photograph any results or reports of

23   physical or mental examinations and of scientific tests or experiments made in connection with the

24   particular case, or copies thereof, within the possession or control of Defendants, which Defendants

25   intend to introduce as evidence in their case-in-chief at trial or which were prepared by a witness whom

26   Defendants intend to call at trial.  Moreover, the United States requested that Defendants disclose

27   written summaries of testimony that Defendants intend to use under Rules 702, 703, or 705 of the

28   Federal Rules of Evidence as evidence at trial.  The summaries were to describe the witness's opinions,

1
2
3
the bases and reasons for those opinions, and the witness's qualifications.  Defendants ha provided

neither notice of any expert witness, nor any reports by expert witnesses.  Accordingly, Defendants

should not be permitted to introduce any expert testimony.

4
5
6
7
8
9
10
11
If the Court determines that the Defendants may introduce expert testimony, the United States

requests a hearing to determine the testifying expert's qualifications and relevance of the expert's

testimony pursuant to Federal Rule of Evidence 702 and Kumho Tire Co. v. Carmichael, 526 U.S. 137,

150 (1999).  See United States v. Rincon, 11 F.3d 922 (9th Cir. 1993) (affirming the district court's

decision to not admit the defendant's proffered expert testimony because there had been no showing that

the proposed testimony related to an area that was recognized as a science or that the proposed testimony

would assist the jury in understanding the case); see also United States v. Hankey, 203 F.3d 1160, 1167

(9th Cir.), cert. denied, 530 U.S. 1268 (2000).

12
**G.    THE COURT SHOULD ADMIT EVIDENCE OF DEFENDANT SANDRA KOLE'S
       PRIOR ALIEN SMUGGLING ACTIVITIES UNDER FRE 404(b)**

13
14
15
16
The United States intends to offer Rule 404(b) evidence regarding Sandra Koles's admitted prior

alien smuggling activities.  During her Mirandized post-arrest interview on December 9, 2007, as well

as after her arrest on November 18, 2007, Kole made voluntary admissions to prior smuggling activities.

17
18
19
20
21
22
23
24
25
26
27
Rule 404(b) precludes the admission of evidence of "other acts . . . to prove the character of a

person in order to show action in conformity therewith," evidence of other acts is admissible to prove

"motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Fed. R. Evid. 404(b).  The Ninth Circuit has adopted a four-part test to determine the admissibility of

evidence under Rule 404(b).  See United States v. Montgomery, 150 F.3d 983, 1000-01 (9th Cir. 1998).

The trial court should consider the following: (1) the evidence of other crimes must tend to prove a

material issue in the case; (2) the other crime must be similar to the offense charged; (3) proof of the

other crime must be based on sufficient evidence; and (4) commission of the other crime must not be

too remote in time.  Id.  In addition to satisfying the four-part test, evidence of other crimes must also

satisfy the Rule 403 balancing test -- its probative value must not be substantially outweighed by the

danger of unfair prejudice.  See Fed. R. Evid. 403.  When the prior act is used to show Defendant's

28

07CR3406-DMS

1   knowledge, the prior act need only "tend to make the existence of the Defendant's knowledge more

2   probable than it would be without the evidence." United States v. Ramirez-Jiminez, 967 F.2d at 1326.

3       Application of the four-part test shows that the standard is clearly satisfied as to Kole's prior

4   smuggling activities. Her admissions as to her involvement in both prior successful and unsuccessful

5   alien smuggling activities tends to prove intent, preparation, plan, knowledge, and absence of mistake

6   or accident. Second, the acts that Kole admitted to are identical to what she is charged with in the

7   present indictment. Third, proof of the crime is based on sufficient evidence – that is, multiple voluntary

8   statements made by Kole. Lastly, the prior conduct occurred in the weeks leading up to the dates

9   charged in the indictment; thus, the conduct is not too remote in time. Furthermore, the probative value

10  of the prior alien smuggling conduct is not substantially outweighed by the danger of unfair prejudice.

11  **H.     THE COURT SHOULD PRECLUDE EVIDENCE OF DURESS AND NECESSITY**

12      Courts have specifically approved the pretrial exclusion of evidence relating to a legally

13  insufficient duress defense on numerous occasions. See United States v. Bailey, 444 U.S. 394 (1980)

14  (addressing duress); United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996), cert. denied, 522 U.S.

15  826 (1997) (addressing duress). Similarly, a district court may preclude a necessity defense where"the

16  evidence, as described in the defendant's offer of proof, is insufficient as a matter of law to support the

17  proffered defense." United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

18      In order to rely on a defense of duress, each Defendant must establish a prima facie case that:

19      (1)     He or she committed the crime charged because of an immediate threat of death or

20              serious bodily harm;

21      (2)     He or she had a well-grounded fear that the threat would be carried out; and

22      (3)     There was no reasonable opportunity to escape the threatened harm.

23  United States v. Bailey, 444 U.S. 394, 410-11 (1980); Moreno, 102 F.3d at 997. If Defendants fail to

24  make a threshold showing as to each and every element of the defense, defense counsel should not

25  burden the jury with comments relating to such a defense. See, e.g., Bailey, 444 U.S. at 416.

26      A defendant must establish the existence of four elements to be entitled to a necessity defense:

27      (1)     that he or she was faced with a choice of evils and chose the lesser evil;

28      (2)     that he or she acted to prevent imminent harm;

(3)    that he or she reasonably anticipated a causal relationship between his or her conduct and the harm to be avoided; and

(4)    that there was no other legal alternatives to violating the law.

See <u>Schoon</u>, 971 F.2d at 195; <u>United States v. Dorrell</u>, 758 F.2d 427, 430-31 (9th Cir. 1985).  A court may preclude invocation of the defense if "proof is deficient with regard to any of the four elements." <u>See Schoon</u>, 971 F.2d at 195.

The United States hereby moves for an evidentiary ruling precluding defense counsel from making any comments during the opening statement or the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity" unless Defendants make a prima facie showing satisfying each and every element of the defense.  The United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and invitation for jury nullification that would result from such comments.

## I.    RENEWED MOTION FOR RECIPROCAL DISCOVERY

As of the date of the preparation of these motions, Defendants have produced no reciprocal discovery that Defendants intend to introduce at trial.  The United States requests that Defendants comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of <u>all</u> witnesses, except for those of the Defendants.  Defendants have not provided the United States with any documents, photographs, or statements.  Accordingly, the United States intends to object at trial and ask this Court to suppress any evidence at trial which has not been provided to the United States.

//
//
//
//
//
//
//
//

13

1

IV

2

**CONCLUSION**

3

  For the foregoing reasons, the United States respectfully moves this Court to grant its motions.

4

DATED:  February 15, 2008

5

         Respectfully Submitted,

6

7

         KAREN P. HEWITT
         United States Attorney

8

         /s/ *Eugene S. Litvinoff*

9

         EUGENE S. LITVINOFF
         Assistant U.S. Attorney

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 07CR3406-DMS |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | CERTIFICATE OF SERVICE |
| PETER MICHAEL MARTIN (1), AND SANDRA KOLE (2) | ) | |
| Defendants. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, EUGENE S. LITVINOFF, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I have caused service of the **UNITED STATES' MOTIONS IN LIMINE** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    **1.**    **Shaffy Moeel, Esq.**

    **2.**    **Scott Pactor, Esq.**

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

N/A

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 15, 2008.

/s/ *Eugene S. Litvinoff*
EUGENE S. LITVINOFF
Assistant U.S. Attorney