**SIRI SHETTY**
California State Bar No. 208812
110 West "C" Street #1810
San Diego, California  92101-5008
Telephone No. (619) 602-8479
Email: attyshetty@yahoo.com

Attorneys for Ms. Sandra Kole

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE DANA M. SABRAW)**

| | |
|---|---|
| UNITED STATES OF AMERICA,                    )<br>                                             )<br>                  Plaintiff,                 )<br>                                             )<br>v.                                           )<br>                                             )<br>**SANDRA KOLE (2),**                         )<br>                                             )<br>                  Defendant.                 )<br>_____  ) | Case No.   07cr3406-DMS<br>Date:       March 14, 2008<br><br>STATEMENT OF FACTS<br>AND MEMORANDUM OF POINTS<br>AND AUTHORITIES IN SUPPORT<br><u>OF DEFENDANT'S MOTION</u> |

**I.**
**STATEMENT OF FACTS**

On December 9, 2007, Sandra Kole and co-defendant Peter Martin were arrested at the San Ysidro Port of Entry after a female was discovered concealed in the vehicle driven by Mr. Martin. (Ms. Kole was a front seat passenger.)  After they were arrested, Ms. Kole and Mr. Martin were separately advised of their <u>Miranda</u> rights.  Ms. Kole and Mr. Martin waived their rights and each provided post-arrest statements to border authorities.  In his post-arrest statement, Mr. Martin implicated Ms. Kole.

On December 19, 2007, the Grand Jury for the Southern District of California returned an Indictment against both Ms. Kole and Mr. Martin. Counts 1 through 6 allege that on November 18, 2007, Ms. Kole brought three illegal aliens to the United States without presentation and for private financial gain, in violation of Title 8 U.S.C. §§1324 (a)(2)(B)(ii) and (iii).  Counts 7 and 8 allege that on December 9, 2007, Ms. Kole and Mr. Martin brought an illegal alien to the United States without presentation and

1  for private financial gain, in violation of Title 8 U.S.C. §§1324 (a)(2)(B)(ii) and (iii).

2                                          **II.**

3           **THIS COURT SHOULD SEVER MS. KOLE'S TRIAL FROM MR. MARTIN'S.**

4      Here, Ms. Kole moves for severance on the following grounds: 1) the government seeks admission of

5  a co-defendant's statement which implicates Ms. Kole, thus compromising her Confrontation Clause

6  rights;  and 2) there is a serious risk that joinder will prejudice Ms. Kole because it is anticipated that Ms.

7  Kole and Mr. Martin will present mutually antagonistic defenses.

8  **A.    Since the Government Seeks Admission of the Co-Defendant's Statements Implicating Ms.
          Kole, This Court Should Grant a Severance In Order to Protect Her Confrontation Clause
9         Rights.**

10     The  Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right

11  . . . to be confronted with the witnesses against him." (U.S. Const., Amend VI).  Under the Confrontation

12  Clause, "[t]estimonial statements of witnesses absent from trial [may be] admitted only where the

13  declarant is unavailable and only where the defendant has had a prior opportunity to cross-examine."

14  Crawford v. Washington, 541 U.S. 36 (2004) (emphasis added).  Indeed, the Supreme Court has

15  recognized that the admission of an incriminating statement by non-testifying co-defendant at a joint trial,

16  where such statements are not directly admissible against the defendant, violates a defendant's Sixth

17  Amendment rights. See United States v. Bruton, 391 U.S. 123, 137 (1968). In Bruton, the Court noted

18  that limiting instructions are not an adequate substitute for cross-examination, and that a co-defendant's

19  extrajudicial statement implicating the defendant should not be admitted because "the risk that the jury

20  will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the

21  defendant, that the practical and human limitations of the jury system cannot be ignored." Bruton, 391

22  U.S. at 135-136; see also Cruz v. New York 481 U.S. 186,193 (1987) (limiting instructions as to

23  admissions of non-testifying co-defendant implicating defendant not adequate even where the defendant's

24  own confession is admitted against him).

25      Here, the introduction of Mr. Martin's statements in a joint trial would compromise Ms. Kole's

26  Confrontation Clause rights because the statements are not directly admissible against Ms. Kole, and

27  implicate her in wrongdoing.  Indeed, the report of investigation indicates that Mr. Martin's alleged post-

28

1  arrest statements "facially, expressly, clearly or powerfully implicate[]" Ms. Kole.  United States v.

2  Angwin, 271 F.3d 786, 796 (9th Cir. 2001). Specifically, according to discovery,  Mr. Martin allegedly

3  stated the following:

4       (1) Although he did not know their ultimate destination, Ms. Kole had more information regarding

5  the location where the vehicle was to be delivered.

6       (2) Ms. Kole showed him how to drive the vehicle in Mexico and drove the vehicle from Tijuana

7  to the border.

8       (3) Ms. Kole provided him the temporary registration to put on the vehicle so that the vehicle

9  would appear lawfully registered at the border.

10       (4) Ms. Kole was to call a set of telephone numbers once they crossed the border.

11       These statements have a "sufficiently 'devastating' or 'powerful' inculpatory impact to be

12  incriminatory on its face" Angwin  271 F.3d at 796 (internal citations omitted), such that their admission

13  in a joint trial would violate Ms. Kole's Sixth Amendment rights. Accordingly, this Court should sever

14  Ms. Kole's trial from that of Mr. Martin in order to preserve Ms. Kole's rights under the Confrontation

15  Clause.

16      **1.    Any Proposed Redaction of Ms. Kole's Name From Mr. Martin's Statement  is Insufficient to Cure the Prejudice Resulting from the Admission of that Statement in**

17                  **a Joint Trial.**

18

19       It is anticipated that the Government will argue that redaction of Ms. Kole's name from Mr.

20  Martin's statement is sufficient to cure any prejudice. Severance of the joint trial, however, rather than

21  redaction, is required in this case, because references to Ms. Kole would remain despite any substitution.

22  Indeed, the "Supreme Court established that even statements that do not explicitly name a co-defendant

23  are forbidden if they are redacted in such a way as to make the naming of a co-defendant obvious to the

24  jury." United States v. Mayfield, 189 F.3d 895, 902 (9th Cir. 1999) (citing Gray v. Maryland, 523 U.S.

25  185 (1998)). In Gray, the Court explained that "redactions that replace a proper name with an obvious

26  blank, the word 'delete,' a symbol, or similarly notify the jury that a name has been deleted are similar

27  enough to Bruton's un-redacted confessions as to warrant the same legal results." 523 U.S. at 195.

28  Following Gray, the Ninth Circuit has held that replacing a co-defendant's name with a neutral name,

1  where it is obvious that one defendant is blaming his co-defendant, is not permissible under <u>Bruton</u>. <u>See</u>,

2  <u>e.g.</u>,<u>United States v. Peterson</u>, 140 F.3d 819 (9th Cir. 1998) (redaction insufficient where the co-

3  defendant's name was replaced with "person X" ); <u>see also</u> <u>United States v. Mayfield</u>, 189 F.3d 895, 902

4  (9th Cir. 1999).

5       In <u>Mayfield</u>, for example, Gilbert and Mayfield were charged and tried together for possession

6  with intent to distribute cocaine. <u>See</u> 189 F.3d at 898-99. Gilbert's confession named Mayfield as the

7  "main man" for whom he sold drugs. <u>Id.</u> at 901. For the joint trial, Mayfield's name was redacted from

8  Gilbert's confession, and replaced with "an individual." <u>Id.</u>  The co-defendant, however, elicited

9  testimony that he had used the words "main man" in his confession, thereby establishing that "an

10 individual" was both male, and the ringleader. <u>Id.</u> at 902.  The incriminating evidence elicited by Gilbert

11 "reinforced what was already fairly obvious from the confession itself: Mayfield was the 'main man.'" <u>Id.</u>

12 Thus, the redaction was impermissible because "the co-defendant was pointing an accusatory finger at

13 someone and it was not difficult for the jury to determine that that person was the other defendant on

14 trial." <u>Id.</u> (internal citations and quotations omitted). Since Gilbert did not testify, the Ninth Circuit

15 concluded that the introduction of his confession implicating Mayfield violated Mayfield's Confrontation

16 Clause rights. <u>Id.</u> at 901-902.

17      Here, as in <u>Mayfield</u>, redaction would not be sufficient because it would be obvious, from the face

18 of the statement, as well as other evidence, that Mr. Martin is pointing the finger at Ms. Kole. Indeed, Mr.

19 Martin's confession shifts the majority of the blame to Ms. Kole. For example, Mr. Martin claims that

20 Ms. Kole had more information on the smuggling details and alleges that she drove from Tijuana to the

21 border. Because the statement focuses on Ms. Kole's actions,  there is no substitution that can be made

22 that does not make it obvious that the person described by Mr. Martin is his co-defendant.  In other

23 words, Mr. Martin's statements, "despite redaction, obviously [would] refer directly to

24 someone,[...]obviously the defendant, and which involve inferences that a jury ordinarily could make

25 immediately, even were the confession the very first item introduced at trial." <u>Gray</u>, 523 at 196. Indeed,

26 "the accusation that [any] redacted confession makes is more vivid that inferential incrimination, and

27 hence more difficult to thrust out of mind. " <u>Id.</u> (internal citations and quotations omitted).  Under these

28 circumstances, redaction is not appropriate, and severance is necessary to preserve Ms. Kole's Sixth

1  Amendment rights.

2  **B.    This Court Should Grant a Severance Because it is Anticipated that the Defendants Will Offer Mutually Exclusive Defenses.**

3

4      Severance is appropriate where "the defenses 'are antagonistic to the point of being mutually exclusive.'" United States v. Ramirez, 710 F.2d 535, 546 (9th Cir. 1983) (quoting United States v.

5  Marable, 574 F.2d 224, 231 (5th Cir. 1978). See also United States v. De La Cruz Belanger, 422 F.2d 723

6  (9th Cir. 1970); Deluna v. United States, 308 F.2d 140 (5th Cir. 1962) (attorney has duty to comment on

7  failure of co-defendant to testify when defendant's interest requires such comment).  Defenses are

8  "mutually exclusive" where the "acquittal of one codefendant would necessarily call for the conviction of

9  the other." United States v. Tootick, 952 F.2d 1078, 1081 (9th Cir. 1991).  Where defendants present

10  mutually exclusive defenses at a joint trial,

11      cross-examination of the government's witnesses becomes an opportunity to emphasize the
12      exclusive guilt of the other defendant or to help rehabilitate a witness that has been impeached.
        Cross-examination of the defendant's witnesses provides further opportunities for impeachment
13      and the ability to undermine the defendant's case. The presentation of the codefendant's case
        becomes a separate forum in which the defendant is accused and tried.
14
Tootick, 952 F.2d at 1082. In such circumstances, both defendants will suffer prejudice because the jury
15
will be unable to evaluate the guilt or innocence of each defendant on an individual basis. See id.
16
17      The Ninth Circuit has recognized that "'[t]he prototypical example is a trial in which each of two

18  defendants claims innocence, seeking to prove instead that the other committed the crime.'" Mutual

19  exclusivity also may exist when "only one defendant accuses the other, and the other denies any

20  involvement." Tootick, 952 F.2d at 1081 (citing United States v. Romanello, 726 F.2d 173, 177 (5th

21  Cir.1984)); see also United States v. Mayfield, 189 F.3d 895 (9th Cir. 1999).  For example, in Tootick,

22  co-defendants Mr. Tootick and Mr. Frank each claimed that the other acted alone in stabbing Mr. Hart,

23  the victim.  See 189 F.3d at 1081. There was no dispute that all three men were present at the scene, and

24  that Mr. Hart did not injure himself.  Id.  Mr. Frank testified that he watched in horror as Mr. Tootick

25  stabbed Mr. Hart.  Id.  Mr. Tootick, who did not testify, presented a defense that he passed out or was

26  asleep throughout the episode.  Id.  These defenses, according to the Ninth Circuit, contradicted each other

27  such that "the acquittal of one necessitat[ed] the conviction of the other."  Id.  Because the mutually

28  exclusive defenses prevented the jury from determining the "guilt or innocence of each defendant on an

07cr3406

1   individual and independent basis," the appellate court concluded that the joint trial resulted in substantial

2   prejudice to both defendants and reversed their convictions. Id. at 1082.

3        Here, severance of Ms. Kole's and Mr. Martin's joint trial is appropriate.  It is anticipated that

4   each defendant will implicate the other, such that the acquittal of one would require the conviction of the

5   other.  For example, if Mr. Martin presents a defense that Ms. Kole was the ringleader, then the jury

6   would necessarily have to convict Ms. Kole if they accepted Mr. Martin's theory. See Mayfield, 189 F.3d

7   at 900. Mayfield is instructive. In Mayfield, Gilbert and Mayfield were arrested in an apartment linked to

8   Gilbert, in which authorities discovered drugs and drug paraphernalia. See 189 F.3d at 897-898. Mr.

9   Gilbert's confession asserted that Mayfield was the "main man" and he presented a defense that he was

10  not guilty because he did not have physical control over the drugs since Mayfield bought them and owned

11  them. Id. at 900. The Ninth Circuit held that a joint trial was inappropriate in part because "[i]t is beyond

12  dispute that, if the jury accepted Gilbert's defense, which was that Mayfield was the ringleader who had

13  control over the drugs, it necessarily had to convict Mayfield." Id.  Here, as in Mayfield, if Mr. Martin

14  and Ms. Kole present anticipated defenses that the other was the individual solely responsible for

15  smuggling aliens without his or her knowledge, a joint trial would involve each defendant's counsel

16  acting as a "second prosecutor" because "[i]n order to zealously represent his client, each co-defendant's

17  counsel must do everything possible to convict the other defendant." Tootick, 952 F.2d at 1081. Under

18  these circumstances, severance of Ms. Kole's and Mr. Martin's cases is appropriate to ensure that the jury

19  can "assess the guilt or innocence of each defendant on an individual and independent basis." Tootick,

20  189 F.3d at 1082.

21                                        **III.**

22  **THIS COURT SHOULD EXCLUDE CUSTODIAL STATEMENTS ELICITED FROM MS.
    KOLE ON NOVEMBER 18, 2007 IN VIOLATION OF *MIRANDA V. ARIZONA* 384 U.S. 436
23  (1966).**

24
    A.    Where Ms. Kole was Subjected to Custodial Interrogation Without the Benefit of *Miranda*
25        Warnings, The Resulting Statements Should be Suppressed.

26       The Fifth Amendment guarantees that no person "shall be compelled in any criminal case to be a

27  witness against himself."  U.S. Const. Amend. V.  In order to protect this constitutional guarantee, the

28  United States Supreme Court established "concrete constitutional guidelines" in Miranda.  See Dickerson

1  v. United States, 530 U.S. 428, 435  (2000).  Specifically, law enforcement officers must provide a

2  suspect with four warnings (the "Miranda rights"): that a suspect "has the right to remain silent, that

3  anything he says can be used against him in a court of law, that he has the right to the presence of an

4  attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if

5  he so desires." Id., citing Miranda 384 U.S. at 479.  In essence, "the accused must be adequately and

6  effectively appraised of his rights and the exercise of those rights must be fully honored." Miranda , 384

7  U.S. at 467.

8      An officer's obligation to provide Miranda warnings to a suspect before interrogation extends only

9  to those instances where the individual is "in custody."  Oregon v. Mathiason 429 U.S. 492, 495 (1977)

10  (per curiam); Miranda, 84 U.S. at p. 444.  The term "custody" encompasses any situation where a person

11  has been arrested or otherwise deprived of his or her freedom of action in any significant way.  Miranda,

12  384 U.S. at p. 444.

13      In the present case, it is anticipated that the Government will seek admission of statements elicited

14  from Ms. Kole on November 18, 2007 at the San Ysidro Port of Entry. The report of investigation

15  indicates that Ms. Kole was taken into custody after border authorities discovered suspected

16  undocumented aliens within the trunk of a vehicle that she was driving.  Accordingly, Miranda warnings

17  were required. The report, however, does not indicate that Ms. Kole was advised of her Miranda rights

18  prior to the interrogation.  Accordingly, the failure of border officials to advise Ms. Kole of her

19  constitutional rights prior to initiating interrogation requires suppression of all statements subsequently

20  elicited.

21  B.    This Court Should Conduct An Evidentiary Hearing to Determine the Voluntariness of
        Ms. Kole's  Statements.
22

23      This Court must make a factual determination as to whether a confession was voluntarily given

24  prior to its admission into evidence. See 18 U.S.C. § 3501(a).  A confession within the meaning of the

25  statute includes "any confession of guilt of any criminal offense or any self-incriminating statement made

26  or given orally or in writing." 18 U.S.C. § 3501(e). Under section 3501(b), this Court must consider "all

27  the circumstances surrounding the giving of the confession," including:

28

(1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel, and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

18 U.S.C. § 3501(b).

Without the presentation of evidence, however, this Court cannot adequately consider the statutorily mandated factors in evaluating the voluntariness of any incriminating statements elicited from Ms. Kole during the November 18, 2007 interrogation. Accordingly, Ms. Kole requests that this Court conduct an evidentiary hearing pursuant to 18 U.S.C. § 3501(a), to determine, outside the presence of the jury, the voluntariness of any self-incriminating statements that the Government intends to offer against her at trial.

**IV.**
**CONCLUSION**

For the foregoing reasons, Ms. Kole respectfully requests this Court to grant these motions.

Respectfully submitted,

Dated: March 2, 2008                           S/ Siri Shetty

SIRI SHETTY
Attorneys for Ms. Kole
Email:attyshetty@yahoo.com